SMOOT *vs.* WATHEN, ADMINISTRATOR, &c.

1. The statute of frauds rendering void loans of personal property, after five years' possession, as to all creditors and purchasers of the persons remaining in possession, &c., does not affect the title as between the parties to the loan, as between them the property is still considered a loan. And where the loanee dies in possession the property is not considered as assets, nor can it be recovered as such by the executor or administrator of the loanee. — See act of January 4, 1825, concerning "Fraud," sec. 3 Rev. Stat. of 1825, p. 402; also, act of February 11, 1835, concerning "Fraud," sec. 5 Rev. Stat. of 1835, p. 283.

2. It is well settled that the five years possession, which gives title under the statute of limitations, and enables a defendant to maintain his possession, or a plaintiff to sustain his action, must be an adverse possession. — See act of March 16, 1835, concerning "Limitation," art. 2 Rev. Stat. of 1835, p. 393, 4.

3. Joint tenants, or tenants in common of a chattel, must join in an action for the recovery of the chattel, or its value.

4. Where an action of detinue is brought by a tenant in common of a chattel, without joining his co-tenants, the non-joinder may be plead in abatement, or may be taken advantage of on the trial although the form of the action is *ex delicto*.—SCOTT, J., dissenting on this point.

ERROR to Cape Girardeau Circuit Court.

LEONARD, *for Plaintiff in Error.*

*First,* The plaintiff below is not a creditor or purchaser within the meaning of the fifth section of the act for the prevention of fraud, passed January 4, 1825, (Rev. Stat. of 1825, p. 402,) or of the fourth section of the same act, revised and passed February 11, 1835, (Rev. Stat. of 1835, p. 283,) and entitled, by virtue of this act, to insist that his intestate acquired title to this slave by five years' continued possession, there being no registered deed or will manifesting the loan.—5 Munf. Rep., 305; Tucker's Commentaries, 345, 346.

*Second,* The statute of limitations did not commence running upon the possession of Mr. Smoot, the husband, until that possession became adverse to the party having the title.— Gillispie *vs.* Gillispie's Heirs, 2 Bibb, 92; Montague *vs.* Lord Sandwich, Esp., N. P. Rep., 595.

*Third,* The verdict was clearly against the evidence. The original possession of the husband was under a loan, and not a gift to the wife, and never became hostile unitl 1836, when he refused to surrender the possession so acquired, and thereby converted his holding into an adverse possession.—Jackson *vs.* Parker, 3 Johns. Cases, 124; Brandt *vs.* Ogden, 1 Johns. Rep., 158; Jackson *vs.* Thomas, 16 Johns. Rep., 300; Jackson *vs.* Waters, 12 Johns. Rep., 367.

SCOTT *and* ZEIGLER, *for Appellee.*

One point only seems to arise in this case :—

Did not the slave Mary become the absolute property of Smoot, he having, in

right of his wife, an acknowledged claim to the slave, and having had the undisturbed possession for nearly six years? This was either a gift or a loan, by Susan Block, of the slave to Rachel Block, alias Smoot, her daughter, wife of William Smoot.

If a gift, the consideration being good—that of marriage,—and as possession *bona fide* accompanied the gift, then the property was Smoot's, the husband, in right of his wife.—Laws of 1825, p. 402, sec. 3; Laws of 1835, p. 283, sec. 4.

If a loan, as is pretended, then the possession of Smoot was ripened into a title, as he remained in peaceable possession nearly six years without any demand made or pursued by due course of law by the pretended lender.—Laws of 1825, p. 402, sec. 3; Laws of 1835, p. 183, sec. 5.

Smoot does not appear to have had anything to do, or to have been consulted or apprised of the pretended arrangements between Susan Block and Rachel, his wife.

It is not necessary that in such cases the possession should be *adverse*, as is pretended by the plaintiff in error. The statute does not contemplate that the possession should be adverse, to give the title.

NAPTON, *J., delivered the opinion of the Court.*

Wathen, administrator of William Smoot, deceased, brought an action of detinue against Rachel Smoot, widow of the deceased, to recover a slave named Mary Ann. The defendant pleaded *non detinet.* Issue was taken thereon, and the cause was submitted to the court, neither party requiring a jury. The court found, that the defendant did detain the slave, and that her value was five hundred and fifty dollars. It was therefore adjudged, that the plaintiff have and recover said slave, or in default thereof, that he recover the damages, &c. A motion for a new trial was made and overruled, and exceptions taken to the opinion of the court.

The facts preserved by the bill of exceptions were the following:—In 1831, the County Court of Cape Girardeau county ordered a division of the slaves of Simon Block, deceased, among his heirs. Commissioners were appointed to make the division, and it appearing, from the report of the commissioners, that division in kind could not be made, an order of sale was made, and a sale took place in pursuance of such order. At the sale, Susan Block, administratrix and guardian of her three minor children, Rachel, Zipporah, and Rebekah, purchased three slaves, Mary Ann, Charlotte, and Jane, for the use and benefit of these minors.

In December, 1832, Rachel Block intermarried with William Smoot, and some few months thereafter went to house-keeping. Mrs. Smoot applied to her mother for the slave Mary Ann, which request Mrs. Block at first declined acceding to, alleging that said slaves, Mary Ann, Charlotte, and Jane, were of unequal value, and designed for all her wards. At the instance of John Juden, who had intermarried in the family, Mrs. Block consented that Mrs. Smoot should have the slave, with the understanding that said slave was to be returned to Mrs. Block whenever demanded. It does not appear that Smoot was privy to this

understanding, or knew anything of the arrangement between his wife and Mrs. Block.

In 1836, in consequence of the marriage of Zipporah, another daughter of Mrs. Block, she applied to the County Court for an order for a division of said slaves, which was granted, and commissioners appointed. Application was made to Smoot for the girl Mary Ann, but he refused to deliver her up. Measures were taken to institute a suit, but nothing was done; and in December, 1838, Smoot died, having retained possession of the slave from the time of his marriage, or shortly thereafter, until his death.

Subsequently to the death of Smoot, in 1839, a division of the slaves was made, and Mrs. Smoot was permitted to retain possession of the girl Mary Ann, by paying to her sisters, Zipporah and Rebekah, seventy or eighty dollars, which the commissioners who made the divisions supposed to be the amount by which said slave Mary Ann exceeded the others in value.

The bill of exceptions, after reciting the testimony, concludes as follows :— "The plaintiff read to the court the statute law of Missouri, and contended that the possession of said slave in controversy by said Smoot, from the time of his inter-marriage with defendant to the time of his death in December, 1838, vested a title thereto in said Smoot by possession.

The defendant contended, that such possession by William Smoot, from the time of such intermarriage to the time of his death, did not vest any right to said slave in said William Smoot, unless the said William Smoot held the slave adversely to said Susan Block, or the rest of said wards; and that the five years' possession by said William Smoot, to vest a title to said slave under the law, could only commence from the time of his refusal to have a division in 1836. The court decided the law in favor of the plaintiff; that the said five years' possession by William Smoot, required by law to vest a title to said slave, commenced from the time he came into possession thereof on his intermarriage, and not from the time of his refusal to have the slave sent to the commissioners for a division in 1836. To which decision of the Court the plaintiff excepts, &c."

The bill of exceptions does not show, in a very satisfactory manner, upon what ground the decision of the Circuit Court was based, or what specific point that court intended to decide. I will, however, consider the question in the different aspects in which it has been presented in the briefs.

1. The statute of frauds, it is believed, has no application to this case. Supposing this to have been a loan, and therefore made void by that statute as to creditors and purchasers, the property, as between the parties, is still considered a loan, and when the loanee dies possessed, the property is not assets, nor can it be recovered as such by the administrator. It is *liable* to the creditors in another form of proceeding.—5 Mun., 305; 1 Tuck. Com., 346.

2. It is well settled, that the five years' possession, which gives title under the statute of limitations, and enables a defendant to maintain his possession, or a plaintiff to sustain his action, must be an *adverse* possession. (Clark *vs.* Hardiman, 2 Leigh., 351; Brent *vs.* Chapman, 5 Cranch., 358.) The Circuit Court, it is stated in the bill of exceptions, held that the possession requisite to give title in

Smoot commenced from the time of his first gettiug possession of the slave after his marriage, and not from the time when he refused to deliver her to the commissioners. The Court may have thought that the possession was adverse from the time of intermarriage, on the ground that Smoot was not privy to the arrangement by which his wife got possession of the slave; but we think the more reasonable interpretation of the language of the judge, in deciding the law for the plaintiff, is, that in his opinion it was not necessary that the possession requisite to give title should be adverse. An adverse possession, under the circumstances of this case, will not be presumed; it must appear by proof. (Gousevoort *vs.* Parker, 3 Johns. Cases, 124.) In the case of Jackson *et dem.* Bratt *vs.* Tibbett, (9 Cowen, 241,) it was held, that where one tenant in common entered in or was possessed of lands generally, he should be preeumed to have entered or taken and possessed, consistently with the common title of all, and though his title was exclusive, the statute of limitations did not run against his co-tenants. But when the party in possession claims an exclusive right by some notorious act, the statute begins to run from the time of such claim. Tenants in common of a chattel have an equal right to the possession, and the possession of one is considered the possession of all, and therefore it is held, that one tenant in common cannot bring an action against his co-tenant to recover possession of the chattel held in common.— Per Lord Mansfield, in Fox *vs.* Hawbray, 2 Cowper, 445.

3. Apart from the title by possession under the statute of limitations, which, as we have seen, must be an adverse one, we are not referred to any other principle upon which the judgment of the Circuit Court can stand. It is suggested, that the plaintiff's intestate, acquired by marriage, whatever interest his wife had in the slave; and that being, in this way, tenant in common with the minor sisters of his wife, this interest passed to his administrator, and may be recovered in this form of action. It is true, that Smoot acquired, by virtue of his marriage, all the title to the slave in question which his wife had, and it would be fair to conclude, from the testimony, that Mrs. Smoot, in eommen with her two unmarried sisters, were owners of the three slaves purchased by Mrs. Block for their use and benefit, and with their money. Smoot, upon his marriage, then, was tenant in common with the two sisters of his wife, and this interest, upon his death, vested in his personal representatives. Where there are joint tenants or tenants in common of a chattel, the joint tenants or tenants in common must join in any action, whether founded *de delictu* or *ex contractu;* but a non-joinder, in cases where the action is founded in tort, can only be taken advantage of by plea in abatement, whilst in actions *ex contractu* it may be taken advantage of at the trial, under the general issue. (1 Chitty Plead., 14.) The action of detinue seems formerly to have been considered an action founded on contract, but later authorities incline to regard it an action *de delictu.*

The gist of the action is now considered the *wrongful detainer*, and the action may be sustained though the defendant obtained possession tortiously. (1 Bos. & Pull., 140.) Still, the action of detinue, whether it be founded on a bailment or a tortious conversion, is for the recovery of a specific chattel, and, in this respect, closely resembles the action of debt or replevin. The judgment is for the specific

chattel, as in replevin, and the action (whatever it may be in form) has in its results but little analogy to actions for injuries to chattels.

In the case of Hart *vs.* Fitzgerald, (2 Mass. Rep., 510,) C. J. Parsons takes a distinction between actions for damages and the action of replevin, notwithstanding this latter action is uniformly placed by writers on pleading under the head of actions *de delicto.* "In trepass or case," the judge observes, "for an injury done to a chattel, each part owner, in fact, is injured, and the damages, if not severed by the form of action, must be divided among the plaintiffs after recovery. In these actions, also, are cases in which one part owner may legally sue alone, without joining his partners. *In replevin, which is founded on property, the chattel is to be delivered to the plaintiff as well as damages to be recovered. This chattel is not capable in law of severance; and the whole or none of it can be delivered to the plaintiff; and if it be delivered to the plaintiff, being but a part owner, he must receive an undivided part in which he claims no property. In replevin,* we do not recollect any case in which a part owner can sue for his undivided part only." It was accordingly held, that though no plea in abatement or in bar was pleaded, yet, it appearing from the plaintiff's own showing that he claimed an undivided moiety of the chattel sued for, judgment was given against the plaintiff. This principle was subsequently recognized by the same court in Gardner *vs.* Dutch, 9 Mass. Rep., 407.

What the Massachusetts courts have said in relation to the action of replevin, will apply with equal force to the action of detinue. The former has been uniformly considered an action *in tort,* whilst the latter has been at times classed indifferently under the heads of contract and wrong, and may therefore, with more propriety, be brought within the general principle governing actions on contract.

Upon the hypothesis, then, that the plaintiff's intestate was a *tenant* in common with the two sisters of his wife, and that the possession of the slave Mary Ann was not adverse to his co-tenants, he cannot maintain an action of detinue for his undivided interest, without joining the other co-tenants in the action. The non-joinder need not, in such an action, be pleaded by way of abatement, but may be taken advantage of at the trial.

The judgment will be reversed, and the cause remanded.


SCOTT, *J.— Separate opinion.*

Neither the statute to prevent frauds, nor the statute of limitations, gave the administrator of Smoot a right of action. The statute to prevent frauds did not, because there was no loan, nor could there have been one, because Mrs. Block, the guardian, had no authority to make such a loan of the slave as would have affected the title of her wards. But had she been the owner of the slave and made a loan, yet as between her and Smoot the title would not have passed by any possession, however long continued. The transaction, as between them, would still have been a loan, and would be so regarded by all courts. The administrator of Smoot, succeeding only to his right, is as much precluded from insisting that the transaction is not a loan as Smoot himself would have been, had

he been alive and had brought this suit. Creditors and purchasers might contend, that as to them, the title to the slave had rested in Smoot, and was subject to their demands against him, and by bringing an action against Rachel Smoot, as executrix *de son tort*, might have recovered the slave.

The statute of limitations did not give a title to Smoot, because his possession was not adverse; he became possessed of the slave with the consent of Mrs. Block, and it was only some two years before his death that he denied her right and claimed to hold adversely. Five years' adverse possession is required by the statute of limitations to give a title to personal property.

It is clear from the evidence, that Rachel Smoot was a co-tenant of the slave in contraversy with her two sisters. Each had an undivided third in each of the slaves. The possession of one joint tenant, or tenant in common, is the possession of all. Rachel Smoot being entitled, as co-tenant, to one-third of the slave, when that slave came to the possession of her husband, he became co-tenant with the other daughters. His wife's property in the slave was reduced into his possession, and being reduced into possession during his life, when he died his right to the slave survived to his administrator, and not to his wife. So Smoot died tenant in common of the slave with his two sisters-in-law, and consequently, the right of his administrator to an undivided third of the slave is unquestionable. The form of this action is detinue, and whatever doubt may formerly have been entertained on this subject, the modern doctrine seems to be well settled, that the action of detinue is an action in form *ex delicto;* it is founded on the wrongful detention of property, and not on contract. The administrator suing as tenant in common and not joining his co-tenants, his action, being in form *ex delicto*, could have been defeated by a plea in abatement, and by such a plea alone. That plea was, however, not entered, consequently, he was entitled to recover. But it is well settled, that in form *ex delicto*, instituted to recover the value of property wrongfully detained, a plaintiff's damages may be reduced by showing that he is tenant in common with others who are not joined. Then the value of the slave, instead of being fixed at five hundred dollars, her entire worth, should have been only one-third of that sum. The case of Hart *vs.* Fitzgerald, (2 Mass. Rep.,) in which it was held that an action of replevin cannot be brought by one co-tenant against a stranger, and that the non-joinder of the co-tenants might be given in evidence on the trial to defect a recovery is contrary to the well-settled doctrine of the common law.— Chitty, 75, 138; 1 Cowper, Fox *vs.* Hanbray, 445; 4 Phil. Ev., 229."

Judgment reversed.