Upham & Gordon v. Allen.

UPHAM & GORDON et al., Appellants, v. E. B. ALLEN et al., Respondents.

*Kansas City Court of Appeals, March 7, 1898.   On Motion For Rehearing.

(FOR ORIGINAL OPINION SEE 73 Mo. App. 224.)

1. Replevin: REVIEW OF EVIDENCE.  On a review of the evidence the court finds, as in its original opinion, that plaintiffs and others were in the joint possession of the property at the time of the caption by the defendant sheriff.

2. ———: DEFECTIVE PARTIES: GENERAL DENIAL: ABATEMENT.  In this state nonjoinder of parties in replevin need not be pleaded in abatement but may be taken advantage of under a general denial; and a plaintiff, showing title in himself and others not parties, can not recover.

*Appeal from the Linn Circuit Court.*—HON. W. W. RUCKER, Judge.

MOTION DENIED.

ELLIS, REED, COOK & ELLIS for appellants.

BENJ. L. WHITE and H. K. & H. J. WEST for respondents.

ON MOTION FOR REHEARING.

PER CURIAM.—The plaintiffs now complain that the opinion evinces a misapprehension of the evidence by us.  In referring to the suppletory agreement of September 23 we said:

"It is plain that the mortgagees in the second and third mortgages were thereby placed in a joint and common possession of said mortgaged property witb

---

*This opinion only reached the reporter August 25, 1898.

those named in the first.   Ellis was no more than an
agent for all the mortgagees.   He turned over the pos-
session to Fox with the acquiescence of the mortgagees.
The latter was but the agent.   *   *   *   His posses-
sion was that of all the mortgagees.''

In the plaintiffs' brief in support of the motion it
is said:

''*So soon as the suppletory agreement made it possi-
ble, Swoffords, the first mortgagees, went again immedi-
ately into possession excluding every one.''*

By reference to the plaintiffs' petition it will be
seen that it is there alleged that on the twenty-third
day of September, 1895, Wren delivered to the plain-
tiffs an agreement in writing supplemental to their
mortgage under the terms of which he delivered to
them the mortgaged property together with other prop-
erty not covered by their mortgage, all to be held under
the terms of the mortgage and suppletory agreement,
and that ''from said last mentioned date until the 28th
of January, 1896 (the date of the caption), continued
to hold possession of all of said chattel property
*   *   *   under said mortgage and suppletory agree-
ment   *   *   *; that on the last mentioned date plain-
tiffs were by and with the consent of said Swofford
Brothers in full and exclusive possession of said prop-
erty'' for the purpose of sale under the mortgage and
suppletory agreement.   The clear inference to be de-
duced from these allegations of the petition is that the
plaintiffs and Swofford Brothers were in the joint pos-
session of the property at least from the date of the
suppletory agreement until the day of the caption when
the former obtained the exclusive possession.   Until
the last mentioned date the plaintiffs were in posses-
sion but not in the exclusive possession, but on that
day their possession was made exclusive of Swofford
Brothers by the act of the latter.   So that on the very

Upham & Gordon v. Allen.

face of the plaintiffs' pleading it is made clear that the plaintiffs' possession was a joint or common possession with the Swofford Brothers, to the day of the caption.

Was the joint or common tenancy terminated before the caption? Fox testified that Ellis turned over the possession of the mortgaged stock of goods to him and that he retained such possession until the twenty-eighth of January, 1896, when the defendant sheriff came into the store (after supper) and asked witness if he wanted to keep the store and said he would like to have it. Witness told him that he could not give it to them "that we had the possession of that house and we expected to keep it, and he said if you do not give it up I will take it; he nailed up the doors, fastened up the doors and turned me out." This witness further testified that he was acting "as agent under these mortgages," that he was acting as agent for Swofford Brothers and the plaintiffs, and that Ellis employed him to act for the latter. And by reference to the testimony of Ellis it will be seen that he was acting for not only Swofford Brothers but the plaintiffs as well, and that Early, the assignee, put him in possession of the store and turned over the keys to him, and the next day he delivered the keys to Fox and put him into possession. So that it is quite obvious that plaintiffs were in possession of the stock of goods first through Ellis and then through Fox in common with the Swofford Brothers until the caption. There is no evidence to the contrary.

It is true Levy, the president of the J. D. Levy Clothing Manufacturing Company, testified in answer to a leading question of the counsel for the plaintiffs that he had permission of the Swofford Brothers to sell the stock of goods and that was the first time that he had charge or exercised control thereof, except under Fox. But this proves nothing in the face of the fact further

stated by both Fox and himself that he (Levy) had only arrived at the place where the store was situated on the day of the caption and was to sell under his notices the next day. If he intended to take possession it is clear that he had not done so. It is likely that he had the consent of Swofford Brothers to sell the goods at auction and apply the proceeds to the discharge of the mortgage debts in the order of priority fixed by the mortgages, but this does not prove that he had taken possession or was in the actual and exclusive possession at the time of the caption.

We therefore think that the plaintiffs are in error in supposing we misapprehended the evidence when we stated in the opinion that the plaintiffs and the Swofford Brothers were in the joint possession of the property under the mortgages and suppletory agreement at the time of the caption.

II. The plaintiffs in their petition allege that they are entitled to the exclusive possession of the property under a mortgage and a suppletory agreement entered into between them and Wren. The plaintiffs adduce evidence in support of the allegations of their petition which shows that they, with other mortgagees, are entitled to the possession under their separate mortgages and a supplemental agreement entered into between Wren and an agent for the several mortgages. The plaintiffs have sued upon a title in themselves and seek to recover upon another title in themselves and other mortgagees of Wren. It is a general rule that defect of parties plaintiff in replevin must be taken advantage of by demurrer, or otherwise such defect is waived.

In this state it is settled that, in replevin, a general denial raises the question of plaintiff's right to the possession, and that it was not necessary for the defendant to plead defect of parties in abatement. If the

answer contains a general denial and the evidence shows that the plaintiff and another are jointly entitled to the possession, there can be no recovery and the verdict must be for the defendant. This was decided as early as 1844, in the case of Smart v. Wathen, 8 Mo. 522–526, as has been the unquestioned law of this state ever since. In that case Judge NAPTON, speaking for a majority of the court, said: "Upon the hypothesis, then, that the plaintiff's intestate was a tenant in common with the two sisters of his wife, and that their possession of the slave, Mary Ann, was not adverse to his cotenants, he can not maintain an action of detinue for his undivided interest without joining the other cotenants in the action. *The nonjoinder need not, in such an action, be pleaded by way of abatement, but may be taken advantage of upon the trial.*"

This question was directly passed upon and decided in the case of Pulliam v. Burlingame, 81 Mo. 11 to 115, where it said: "In pleading to this action (replevin) under the code a general denial has been held sufficient to put the plaintiff to proof of title or right of possession, without any averment of title in the defendant or in a stranger. Gray v. Parker, 38 Mo. 160. Thus, it seems, the defense embodied in the refused instruction (that plaintiff and defendant's wife were joint owners of the property) was admissible enough under the pleadings." In the case of Oester v. Sitlington, 115 Mo. 247, it is held that a plea of general denial in such an action (replevin) is sufficient to raise the question of waiver since it puts in issue the plaintiff's right to the possession of the property at the commencement of the action. In Deyerle v. Hunt, 50 Mo. 541, a suit in replevin, it is said: "So it has been held, that if a right of action is alleged to be in one, there is a fatal variance when the proof shows it to be in two or more. Spooner v. Ross, 24 Mo. *supra*;

Thieman v. Goodnight, 17 Mo. App. 429. This rests on the logic of the rule that the right of action alleged is constitutive and must be proven.'' In the case of Bruce to use, etc. v. Sims, 34 Mo. 246–251, it is said: ''The answer of the defendants averred that Davis was, at the time of the levy, the full and absolute owner of the store, and they can not be permitted to contradict their own pleading by setting up that the store belonged to the partnership. *The averment was probably unnecessary, but having made it, they must abide by it.''* In the case of Pugh v. Williamson, 61 Mo. App. 165–168, this question was before the St. Louis court of appeals. In that case it is held: ''In a replevin suit the plaintiff must aver ownership of the property and the right to its immediate possession; therefore, anything may be shown under a general denial which tends to disprove his title or his right to possession.'' In Young v. Glasscock, 79 Mo. 572–577, it is said: ''When, in an action of replevin, under a code not unlike ours, the answer contained a general denial and then further pleaded that the property was owned and possessed by a third party, it was held that this additional averment was but another form of denial and was not new matter which would be taken as admitted by a failure to reply. Woodworth v. Knowlton, 22 Cal. 164. The fact that the evidence thus introduced was of an affirmative character does not matter, because it contradicts the allegations of the complaint, and may therefore be proved to maintain the negative issue raised by the defendant's denial.''

In Bliss on Code Pleading [3 Ed.], section 328, after laying down the same rule in ejectment, it is said: ''Upon the same principle, in action for the recovery of personal property, a denial puts in issue the plaintiffs ownership; and an averment by defendant that

the property belongs to a third person is not new matter within the meaning of the statute, it is but another form of denial of plaintiff's ownership, and right of possession set forth in the complaint.'' Judge BLISS cites in support of this rule, Woodworth v. Knowlton, 22 Cal. 164; Kennedy v. Shaw, 38 Ind. 474; Griffin v. R. R., 101 N. Y. 348; Spinks v. Heritage, 45 Ind. 66; Davis v. Warfield, 38 Ind. 461; Pulliam v. Burlingame, 81 Mo. 111. These cases abundantly sustain the text. It may be added that the case of Reinheimer v. Hemingway, 35 Pa. St., is a leading case on this question and directly in point.

It must be conceded that the law has long been settled in this state that nonjoinder of parties in replevin need not be pleaded in abatement but may be taken advantage of at the trial. And it is equally well settled that when a plaintiff in replevin alleges title in himself and his proof shows the title to be in himself and others who are not made parties he can not recover. There are authorities to the effect that it is sufficient to maintain replevin to show the plaintiff's right to the exclusive possession in himself as against the defendant in the action, but as has been seen by the adjudicated cases from which we have quoted the rule does not prevail in this state.

We must adhere to the conviction expressed in the opinion and overrule the motion.